# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RICHARD REYES, individually and
On behalf of all others similarly situated

Plaintiff,


V.                                            Case No: 8:21-cv-00976

STRADA SERVICES INC. d/b/a
Strada Electric and Security,

Defendant.
_____.

## FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD REYES, individually, and on behalf of all others similarly situated, who consent to their inclusion in this collective action, bring this lawsuit pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), against Defendant, STRADA SERVICES INC., d/b/a Strada Electric and Security (a florida registered fictitious name) (hereinafter "Strada") for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* for failure to pay overtime compensation and a premium for all hours worked over forty (40) each week.

## INTRODUCTION

1.     The Fair Labor Standards Act is our nation's foremost wage law.  The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. § 202(a).  To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers.  29 U.S.C. §§ 206(a) and 207(a).  It requires minimum wage and overtime pay for certain non-exempt employees.  29 U.S.C. §213.

2.     Plaintiff, Richard Reyes ("Reyes" or "Plaintiff") worked for Defendant from on or about January, 2019 through April 2021 from Defendant's Port Richey, Florida   office as an "electrician", and/or Electrical Installer (hereinafter "installer") a.

3.     Defendant has maintained a scheme to avoid its obligations to pay overtime wages to its non-exempt, labor workers and employees  in order to save millions of dollars in labor costs and maximize profits all to the detriment of its employees.

4.     Defendant shaves or edits overtime hours from the employees' time records and also permits laborers and non-exempt employees to suffer to work off the clock.

5.     Defendant also discourages and takes actions to intimidate and prevent full and accurate reporting of all work hours for all piecework workers and labors, such as Plaintiff and "Helpers", a job title which may not be formal but is the name referred to for a certain class of workers and position to describe the laborer who rides along with the Installer/electrician to all work sites and on work orders.

6.     Plaintiff, like his fellow piece rate workers and laborers, and who are members of this putative Class, worked at upwards of 22 locations throughout Florida, ultimately overseen and reporting to the Defendant at its corporate office located in Sanford Florida, and under the complete direction and control of the CEO, Strada

7.     All Helpers and installers (aka electricians), and other low voltage technicians were paid on a piece rate per work order or job assigned, irrespective of the number of hours worked in any day or any work week.

8.     Defendant either willfully mis classified Plaintiff and all other piece rate workers as exempt employees under the FLSA, or willfully violated the FLSA by refusing to pay any premiums for overtime hours they knew of should have known were worked by piece rate workers and laborers, under the titles of helpers, installers, electricians, or technicians.

9.     Plaintiff, like his fellow piece rate workers in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied any overtime pay for most if not all hours they worked in excess of forty (40) on behalf of Defendant.

10.     Defendant maintained a common unlawful pay practice applicable to all piece rate pay workers, shaving or editing off all work hours over forty (40) in each work week, and precluding the Plaintiff and all piece rate workers from being able to report and log any hours greater than 40 for each workweek on their work order forms.  .

11.     Accordingly, Plaintiff, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, sue Defendant for violations of the Fair Labor Standards Act for: (1) failing to pay the Plaintiff and others similarly situated overtime compensation; and (2) failing to maintain and preserve accurate and true records of all hours worked.

## FLSA CLASS DEFINITION AND RELIEF SOUGHT

12.     This collective action is to recover from Defendant overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of:

All persons employed by or performing work for STRADA SERVICES INC.. working or or reporting to an office or location in Florida, under a piece rate compensation plan, under the titles of Helper, installer, technician, Rough and Trim Installer, Right and Trim Electrician, or electrician and any other job titles previously or currently used to describe persons working as on a piece rate basis any time within the three (3) years preceding this lawsuit to the day of trial.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, since this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., §§201-219, inclusive.

14.     This Court has personal jurisdiction over this action because the Defendant is engaged in business within the State of Florida.

15.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b) since the acts complained of herein took place in this District, this is the home District where Defendant maintains a local office from where Plaintiff reported to for work.  In addition, Defendant's corporate offices located in Sanford, Florida are likewise within this district and from where the unlawful policies and practices complained of herein were created, carried out, and enforced.

16.     Upon information and belief, Defendant has revenues of $500,000.00 or more in the previous three (3) years and employs ten (10) or more employees.

17.     Plaintiff is engaged in interstate commerce, ordering and obtaining products and materials from across state lines, and then installing such products and materials.

18.     At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§206(a) and 207(a).

19.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.  The state law claims are so related to the FLSA claims and also arise out of the same common nucleus of operative facts such that they form part of the same case or controversy.

## THE PARTIES

20.     At all times relevant to this action, Representative Plaintiff Robert Reyes resided in Florida, and within this district, and at all times material, worked for Defendant as an "electrician", also known as a Residential Rough & Trim Installers.

21.     Defendant is an employer as defined by 29 USC section 203d, as defendant is directly involved in decisions and infect affecting employee compensation and hours and hours worked by the plaintiff and all other similarly-situated present and former employees. Dependent also directed the work

and the day-to-day work activities that the plaintiff and all others similarly situated, created the pay practices be unlawful pay practices alleged, and enforced those pay practices.

22.     Defendant, Strada, is a Florida, for profit corporation with principal place of business in Sanford, Florida located at 3400 ST. JOHNS PARKWAY, SANFORD, FL 32771.   Defendant may be served through its registered agent, owner and CEO, Joseph Strada at the same address.

23.     Defendant owns and does business under the Florida registered fictitious business name of Strada Electric and Security, and operates 22 offices throughout Florida where similarly situated present and former employees worked from or reported to.

24.     defendant operates a Statewide electrical contracting and Security Services Company throughout the State of Florida from its corporate office located in Sanford Florida.

25.     As per defendants website, Strada electric.com, the defendant operates at least 22 offices throughout the State of Florida, in addition new offices in Houston Texas, Daphne, Alabama,.within the relevant three-year class period.

26.     Defendant, upon information and belief, employed upwards of 250 or more, laborers, working under the titles of electricians, installers, technicians, and helpers all of whom.

## GENERAL FACTUAL ALLEGATIONS

27.     Plaintiff, like these other employees under these job titles, was paid on a piece rate,. the backbone of the defendants pay practices and business practices is paying employees on a piece-rate basis and willfully engage in a scheme to avoid paying overtime wages.

28.     Plaintiff was hired by Defendant in January 2019 to work as a so-called "electrician", even though he's not an electrician by education, training, certification, and by Defendant's own job postings and communications, here's really and actually called an "installer".

29.     Plaintiff is not a licensed educated or degreed electrician and no such degree, education, diploma, or certification was required for a plaintiff to be hired in this position.

30.     Even though plaintiff applied for a position as an "electrician", defendant's job posting for "electrician" or "Residential Rough & Trim Electricians" in the exact same job posting, Defendant therein labels the position as "Residential Rough & Trim Installers"... for all locations.

31.     More importantly, Plaintiff is neither by any educational requirement, licensure, certification, an electrician, and upon information and belief, none of the people filling these positions are required to be licensed, educated, certified or degreed electricians.

32.     The position posted for "Electrician" or "Residential Rough & Trim Electrician" has only 1 requirement for applicants:  the "Ability to use hand and power tools properly."  Other work experience of 2 years is merely "preferred", and thus not required, and neither is any certification, licensure or degree as an electrician.

33.     Plaintiff's friend, Scarleht Santos, with no prior similar experience was hired by Defendant as a "helper", and then after a few months, was promoted to being an "electrician" or installer.

34.     After approximately one week of training by riding along and following with another employee, the plaintiff was given a van and assigned jobs to perform installing electrical equipment and materials in primarily residential homes under construction.

35.     Plaintiff was also assigned a helper, somebody who would assist with all of the installation work and ride along with the plaintiff in the company van.

Next paragraph plaintiff was forced to pay his income with the helper and pay this helper a percentage of the contractual piece rate.

36.     Defendant left the discretion to the plaintiff to determine how much to pay the helper even though the helper was in fact an employee of Defendant and worked the same hours as the plaintiff.

37.     In other words, the defendant subsidized the payroll and it's labor cost for the helper by charging the plaintiff this amount and forcing the helper to have his or her compensation determined by the installer.

38.     Throughout plaintiff's employment, he routinely was required to work NX support in excess of 40 hours per week without being paid or compensated any premium pay for said hours.

39.     In order to complete the work and the jobs assigned to him by the defendant, the plaintiff routinely had to work more than 8 hours in a day and more than 40 hours in a week.

40.     the defendant did not have the plaintiff clock in and out his actual work hours. However, defendant maintained a GPS tracking in the company van provided to the plaintiff to drive such that defendant is actually aware of the true and accurate work hours of the plaintiff which can be determined by the GPS

records showing the time leaving the company Warehouse, arriving at the first job, and the completion or leaving of the last job site.

41.    Upon information and belief in order to Aid its scheme to avoid paying overtime wages, and to deceive and defraud the plaintiff and all others similarly situated from overtime wages, the defendants had the installers complete a work order sheet which purports to have work hours on the work order form.

42.    Plaintiff was instructed to put no more than 8 hours per day regardless of the hours spent actually working on each day.

43.    The defendant instructed plaintiff for each and every work week, to claim and report no more than 40 hours whatsoever.

44.    On an occasion when the plaintiff did report more than 40 hours, the defendant edited off the hours or white it out, or handed it back to the plaintiff to do so. the defendant treated other employee installers in the same manner, either forcing them to edit off hours, or the company doing itself.

45.    On other occasions, the plaintiff Superior would fill in the work hours.

46.    These purported worksheets job orders therefore are completely inaccurate and unreliable as to the actual work hours of the plaintiff and all others similarly situated.

47.    Plaintiff was paid on a strictly piece-rate basis; however, these piece rates were typically non-published and we're non-negotiable.  Further, as to each job or work order, there was a rate assigned and designated by Defendant without input or discussion with Plaintiff.

48.    Plaintiff then had to split the piece rate at 30% with the designated helper, and was warned by Defendant that the piece rate had to cover Defendant's minimum wage obligations for this employee. Thus, Defendant made it clear that Plaintiff had to at a minimum, split 30% of the piece rate with the helper.

49.    Throughout plaintiff's employment, he was instructed that he had to work at a minimum of Monday through Friday, 7 a.m. to 3:30 pm.

50.    Plaintiff routinely worked far in excess of 3:30 PM, even working into the late evening hours. Plaintiff also had to come and work on the weekends routinely in order to complete the job.

51.    Plaintiff would not be given additional jobs if you did not complete the one he was working on and he was expected to complete the job in a certain number of days no matter how many hours it took him to complete it.

52.    Plaintiff was required to work with a "helper", the actual job title designated by Defendant to a preposition Defendant regularly rrcuits for and hires as its own employees.

53.     However, Defendant advised that the compensation to be paid to the helper was within his discretion, but had to be at or near 30% in order to cover minimum wages for the helper.

54.     In other words, Defendant passed on its own labor costs for its staff of helper employees, onto Plaintiff and all other "electricians", aka Installation

55.     Plaintiff was not required to clock in and out for his work hours.

56.     Plaintiff was provided with work orders, which purports to seek from Plaintiff  the work hours for the work performed for each respective job assigned, usually labeled as either:  Trim In Work Order, Trim Out work order, or Rough In Work order, or sometimes sometimes a service call.

57.     Much of the time, Plaintiff signed the work order forms without in putting any actual work hours, as Plaintiff was never asked or required to clock his actual hours, and his pay was pre-determined by the job signed, not by the hours worked.

58.     Plaintiff's supervisor would fill in the hours on work orders.

59.     Sometimes Plaintiff would, at the direction of his superior and Defendant, put in 8 hours for each calendar day worked, regardless of the actual hours worked, with the explicit instruction that never to put in more than 8 hours for any respective work day.

60.     Additionally, each week, the hours on the work orders could not total more than 40 hours, and if that were to occur, the manager would whiteout or edit the work orders to reflect no more than 40 hours.

61.     Defendant, tracking plaintiff's work activities from the moment he arrived at the warehouse, and to and from all jobs and worksites, was 100% aware of the actual work hours of Plaintiff.

62.     Defendant was fully aware and knew that Plaintiff was working more than 40 hours each week, in addition to the "helper" that rode along with Plaintiff on all job sites as a 2 man team.

63.     Defendant also was thus aware that the work orders contained false information of actual work hours, and that these work orders were clearly unreliable, inaccurate and false representations of the actual work hours of electricians, installsers, and helpers.

64.     Plaintiff was told by Defendant that it did not pay overtime pay or compensation for hours worked over and above 40 hours in any workweek.

65.     Plaintiff was told by Defendant he had to work as many hours as necessary to complete the work orders and jobs assigned.

66.     , As Plaintiff was paid strictly on a piece rate, and told he was not going to be paid any additional pay for hours beyond 40 in any workweek, if twas

of no consequence to the Plaintiff that the work order, and his paystubs, contained false information as to his actual work hours worked.

67.   When hired, Plaintiff was advised that he was going to be paid solely on a piece rate pay plan, and that the number of work hours had no relationship to his pay.   The compensation and piece rates offered were not negotiable, and presented on a "take it leave it" basis.

68.   For purposes of the collective action, Plaintiff Reyes by this Complaint, gives his written consent to be a party to this action pursuant to 29 U.S.C. §216(b).

69.   At all times relevant to this action, Defendant was an employer of Plaintiff and all other laborers and piece rate pay workers of this proposed FLSA collective action within the meaning of 29 U.S.C. §203(g).

70.   Defendant maintained a policy and practice for some period during the preceding three (3) years of shaving and editing overtime hours, or commanding inside sales representatives to shave or edit off overtime hours worked and thus, not paying overtime wages.

71.   During the same time period, and through the present, Defendant maintained a policy of permitting piece rate workers and laborers, including

Plaintiff, to suffer to work more than 40 hours in workweeks, without being paid a premium for all hours worked over forty (40) in each and every work week.

72.    Defendant threatened, warned and attempted to intimidate Plaintiff and all other piece rate workers from making claims for overtime pay by communicating that complaints would subject them to termination of employment.

73.    Defendant also falsely advised Plaintiff and other piece rate workers that the company policy was that they would not pay a premium for overtime hours worked, and that such work is thus "on their own dime." or that they were not legally required to pay overtime premiums for work hours more than 40.

74.    Meanwhile, and simultaneously, Defendant pressured, coerced, suggested Plaintiff, and all other piece rate workers against repotting more than 40 hours in any work week but that the failure to work all hours necessary to complete eht work orders and jobs would subject them to discipline and termination of employment for failing to keep up with expected deadlines and predetermined work order jobs estimation of work times.

75.    Similarly, Plaintiff and all other piece rate workers would suffer financially if they did not put in as many hours as they could physically handle to get the job done, as they would not be able to work on another work order and be

eligible for more compensation until the current work order and job was completed.

76.    Thus, if Plaintiff took 40 hours to do 1 job, his pay was and would be seriously reduced, and thus he would work into the eventing hours and on weekends to complete the jobs so he could get more work order and thus more pay.

77.    Defendant, by and through its managers, knew that the work orders assigned to Plaintiff and all other similarly situated helpers, installers, technicians and piece rate workers regularly required them to work more than 40 hours in the work weeks, and clearly more than the  8 hours per day they instructed Plaintiff to cap when filling in the hours on the work order forms for hours worked. .

78.    Defendant acquiesced, accepted, permitted and encouraged Plaintiff and all others similarly situated to work additional hours beyond the minimum schedule of 7:00 am until 3:30 pm without being paid any premium for all hours over 40 in  each respective work week.

79.    Plaintiff routinely worked 6 or more days in a calendar week, thus on a weekend, and likewise routinely was required to work far beyond 3:30 pm., including as late as 11:00 pm to finish the jobs so he could meet company expectations, and as well get another job or work order assigned and earn additional piece rate pay.

80.    Defendant maintained a culture and environment of fear, coercion and intimidation against piece rate workers complaining about the manner in which they were and are compensated, and against questioning or complaining about not being paid any premium for overtime hours worked.

81.    Defendant's management discouraged Plaintiff and other inside sales representatives from complaining about or challenging Defendant's pay practices and pay policies, again, with warnings of risk of harm to their positions in the company or future with the company.

82.    Upon information and belief, all Helpers, technicians and installers were paid on similar piece rate plans as Plaintiff.

83.    Plaintiff and members of the Class were willfully denied overtime wages by Defendant as a whole or group under a ***De Facto policy (unwritten policy)*** against recording or claiming hours over forty (40) in any workweek.

84.    Defendant has willfully violated, and continues to violate §207 of the FLSA by failing to pay Plaintiff and others similarly situated overtime compensation for all hours worked in excess of forty (40) per week.

85.    Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA §207 that are

complained of herein have been practiced and imposed upon all piece rate workers, unde the job titles of helpers, installers and electricians.

86.     The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. §207(a)(1). Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no exemption applies in the instant matter, and Defendant has treated Plaintiff and all piece rate workers as either exempt employees during this relevant class period to the present, or just has willfully violated the FLSA by not paying premiums for overtime hours worked.

87.     While the overtime rate of pay could be half of the regular rate of pay for piece rate workers, that is to be determined at a later date by the Court.

88.     Moreover, pursuant to the FLSA and DOL regulations, Plaintiff and all piece rate pay workers herein are entitled to be paid a premium for all overtime hours worked, at or above a half time rate of their regular rates of pay, for all hours worked over forty (40) in each and every workweek.

89.     Defendant knew this and continued to steal wages and refuse to pay overtime premiums, despite numerous lawsuits and payment of thousands of dollars in back wages unlawfully withheld to its employees.

90.     Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

91.     Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during the course of their employment with Defendant.

92.     Throughout Plaintiff's employment, he found it necessary to perform work outside of the office and from home, during evenings and on weekends, including reading and sending emails, handling presentations, receiving or making telephone calls, and other research and without a means to record or report such work hours.

93.     It was against the best interests of piece rate workers  to stop working at 3:30 pm, or not put in as many hours as possible physically in order to complete a job as quickly as possible.

94.     However, Defendant was aware that installers, technicians, electricians and helpers were performing work outside of the stated 7:00 am to 3:30 pm, monday-friday work schedule, and more than the 8 hours per day as stated on the work order, but permitted, endorsed, encouraged plaintiff and all piece rate workers to work as many hours as necessary to complete the jobs as

quick as possible but without being paid premiums for hours over 40 in the workweeks..

95.    Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendant's failure to pay overtime compensation was and is a knowing and willful violation of the overtime wage requirements of the FLSA.

96.    The Defendant's practices are clearly unlawful, and Defendant knew it, because it faced numerous lawsuits and claims from other piece rate workers, in the cases of:  *Vasquez v. Strada Services Inc, Case no. c:-18-CV-01288; Serna v. Strada Services Inc., case no- CV-28911-TPB; Vargas v. Strada Services Inc., case no. 6:19-1892-EJK,* *all filed in the United States District Court, MIDDLE DISTRICT OF FLORIDA.*

97.    Despite having to pay many thousands of dollars in stolen overtime wages to these former piece rate employees, and others who joined or filed consents, Defendant refused to change its unlawful pay practices and continued with its scheme to avoid its obligations under the FLSA to pay a premium to this non-exempt, piece rate workers as required by the FLSA.

98.     Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendant maintained a scheme to evade and avoid their FLSA wage obligations.

99.     Accordingly, Plaintiff and the putative Class of similarly situated seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid, an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED

100.   All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

101.   Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendant.

102.   However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

103.   With respect to an employee subject to the FLSA provisions, the following records must be kept:

    a.    Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

    b.    Hour and day when workweek begins;

    c.    Regular hourly pay rate for any week when overtime is worked;

    d.    Total hours worked each workday and each workweek;

    e.    Total daily or weekly straight-time earnings;

    f.    Total overtime pay for the workweek;

    g.    Deductions from or additions to wages;

    h.    Total wages paid each pay period; and

    i.    Date of payment and pay period covered

104.   Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. §215(a)(5); *See also,* <u>Dunlop v. Gray-Goto, Inc</u>., 528 F.2d 792 (10th Cir. 1976).

105.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the FLSA.  An employer that fails to maintain the required records cannot avoid liability in a

wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  *See* <u>Wirtz v. First State Abstract Ins. Co.</u>, 362 F.2d 83 (8th Cir. 1966); <u>Boekemeier v. Fourth Universalist Soc'y</u>, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

106.   An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See* <u>Myers v. The Copper Cellar Corp.</u>, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing* <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946).

107.  Defendant has failed to accurately record, track and report the Plaintiff's work hours, and for and Class of similarly situated members' time and work hours as required under the FLSA.

108.   Defendant has failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR §516.2 and 29 U.S.C. §§211, 216 and related laws.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

109.   Plaintiff brings this action individually and on behalf of all others similarly situated who worked as piece rate labor workers, under any title, such as helpers, electricians, installers or technicians, referenced herein as the putative

class, as a collective action pursuant to the Fair Labor Standards Act.  29 USC §216(b).

110.   In <u>Young v. Cooper Cameron Corp.</u>, the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." <u>Young v. Cooper Cameron Corp</u>., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

111.   Still, despite the <u>Young</u> court's ruling, the members of the Class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case.  While the exact number of the members of the putative Class is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff believes that there are 300 or more individuals in the defined class within the three (3) year relevant class period.

112.   Plaintiff will fairly and adequately protect the interests of the putative Class of similarly situated inside sales representatives, and has retained counsel that is experienced and competent in class/collective actions and employment

litigation.  Plaintiff has no interest that is contrary to, or in conflict with, members of the putative Class.

113.   A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

114.   A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendant will retain the proceeds from its violations of the FLSA.

115.   Furthermore, even if any member of the Class could afford individual litigation against the Defendant, it would be unduly burdensome to the judicial system.   The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

116.   Upon information and belief, all piece rate workers were trained on an ad hoc basis, including Plaintiff, without any formalized and structured training program, other than to ride along with another experienced worker and see how it's done.

117.   There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.  The question of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action.  Among common questions of law and fact are:

a.   Whether Defendant employed members of the Class within the meaning of the applicable provisions of the FLSA;

b.   Whether Plaintiff and members of the Class were expected, permitted, and encouraged to regularly work hours in excess of forty (40) per week off the clock and without being paid a premium for all hours worked;

c.   Whether Defendant unlawfully either edited or shaved overtime hours from employees time records, or required and instructed employees to shave, edit and remove or not submit overtime hours on their own weekly time records;

     d.    Whether Defendant knowingly failed to maintain and preserve accurate and true records of all hours worked and wages earned by Plaintiff and the Class;

     e.    Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of such damages;

     f.    Whether Defendant willfully and with reckless disregard, underpaid Plaintiff and the class of similarly situated, even when they did pay a premium for overtime hours worked;

     g.    Whether Defendant maintained a De Facto, unlawful policy against paying overtime wages to piece rate workers and against piece rate workers from claiming or reporting all hours worked; and

     h.    Whether Defendant permitted Plaintiff and all other similarly situated to suffer to work off the clock.

118.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action.

## COUNT I
## VIOLATION OF § 207 OF THE FLSA

119.   The foregoing paragraphs are realleged and incorporated as if fully set forth herein.

120.   At all relevant times, Defendant employed Plaintiff, and/or each member of the Putative Class of similarly situated, and continues to employ members of the Putative Class, within the meaning of the FLSA.

121.   Upon information and belief, all electricians, helpers, installers and technicians were paid under a common and similar compensation plan and scheme, comprised of a piece rate pay per job or work order, and irrespective to the number of hours worked.

122.   Defendant assigned a specific rate for each job or work order, rather than providing the plaintiff with any set price sheet or pay codes, such that Plaintiff would not know their own pay until each work order was given to them.

123.   Defendant maintained a De Facto policy and practice of refusing to pay overtime compensation to piece rate workers for the hours worked in excess of forty (40) hours per week.

124.   Defendant intimidates, coerces, and dissuades piece rate workers from reporting or claiming overtime hours (hours over forty (40)) in a workweek for fear

of scrutiny, discipline and management displeasure, meanwhile, suggesting, encouraging and even warning piece rate workers to meet and exceed quotas, production goals, and times assigned to jobs

125.   Defendant's management is well aware of employees working more than 8 hours in a day, more than 40 hours in a week, and well beyond the minimum work schedule of Monday to Friday,  7:00 am until 3:30 pm, and does not discipline these employees for doing so.

126.   Defendant does not instruct, order or command employees to leave at the end of their shift time, nor do they prohibit employees from performing work activities they know piece rate workers are engaging in on behalf of Defendant in the evenings and on weekends.

127.   As a result of Defendant's unlawful pay practices complained of herein, throughout the three (3) year class period to the present, Defendant has willfully stolen many millions of dollars or more in wages from piece rate workers.

128.   Defendant knowingly and willfully failed to pay Plaintiff and all other members of the Class, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendant above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. § 207.

129.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

130.   Defendant is well aware that in order to meet goals, job completion times and , to complete and perform their job duties to the expectations of Defendant, piece rate workers must work more than forty (40) hours in a workweek routinely, and especially since they are not able to earn more pay unless and until they finish a job they start.

131.   Moreover, by the inherent nature of piece rate work, generally Defendant understands that the more hours inside sales representatives put in and work, the more likely they will produce more in sales revenue for Defendant and thus earn more commissions for the inside sales representatives.

132.   Defendant induced and mislead persons applying for and accepting the position of inside sales representatives into believing that they were to receive both a base hourly pay, or salary for performing forty (40) hours of work per workweek, free and clear and separate from the eligible commissions, and that they would be paid time and one half (1.5) their regular rates for all overtime hours worked.

133.   Instead, Defendant engaged in a scheme to avoid paying overtime wages.

134.   Defendant knew that the work assigned to piece rate workers employed under the various job titles of installers, helpers, electricians and technicians would result in employees working more than forty (40) hours routinely in order to meet goals, job and work order requirements and other performance metrics.

135.   Defendant willfully failed and refused to pay Plaintiff and all other similarly situated piece rate workers a premium for all overtime hours worked.

136.   Defendant cannot and does not have a good faith basis under the FLSA for its willful actions and conduct of refusing and failing to pay Plaintiff and all similarly situated piece rate workers lawful rates for all overtime hours worked over 40 hours in each and every workweek, especially since the law is clear and Defendant had 3 or more similar lawsuits and never corrected its unlawful pay practices or went and paid all piece rate workers for the 3 years of overtime wages they stole from them.

137.   Plaintiff and the class of similarly situated thus are entitled to, and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

138.   Due to Defendant's willful FLSA violations, Plaintiff alleges on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendant the unpaid and underpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

139.   Plaintiff and the class of similarly situated have suffered financial harm and loss of monies owed to them as a direct and proximate result of Defendant's unlawful pay practices complained of herein.

**WHEREFORE** Plaintiff, RICHARD REYES prays for:

a.     An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Join this action as plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of STRADA SERVICES INC. any time during the three (3) year period immediately preceding the

filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b.   An order awarding attorneys' fees and costs pursuant to §216 of the FLSA;

c.   That the Court find Defendant in violation of the overtime compensation provision of the FLSA and that the Court find that Defendant's violations of the FLSA were and are willful;

d.   That the Court award Plaintiff Reyes and the putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours in each and every workweek at correct and lawful rate of pay during the past three (3) years, AND an equal sum in liquidated damages.  In addition, interest on said award pursuant to §216 of the FLSA;

e.   That the Court appoint Mitchell Feldman, Esq. and the firm of Feldman Legal Group as class counsel in the FLSA collective action, and appoint Richard Reyes as class representative for all those similarly situated with the authority to negotiate on all opt in plaintiffs behalf; and

f.     That the Court award any other legal and equitable relief as this Court

may deem appropriate, fair and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury on all questions of fact raised by this Complaint and on all

other issues so triable.

Filed this 23th day of April 2021.

Respectfully submitted,

*/s/Mitchell Feldman, Esq.*
**Mitchell L. Feldman, Esquire**
Florida Bar No.:  0080349
FELDMAN LEGAL GROUP
6940 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366 - Fax: 813-639-9376
Email:Mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff, and the class*
*Of similarly situated*