UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD REYES,

    Plaintiff,

v.                                Case No. 8:21-cv-976-VMC-TGW

STRADA SERVICES INC.,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Plaintiff Richard Reyes's Motion seeking conditional certification of an FLSA collective action (Doc. # 32), filed on July 2, 2021. Defendant Strada Services Inc. ("Strada") responded in opposition on July 26, 2021 (Doc. # 45), and Reyes replied on August 11, 2021. (Doc. # 54). For the reasons explained herein, the Motion is denied.

**I.**   **Background**

According to the complaint, Reyes worked for Strada from January 2019[1] until April 2021 as an electrician and/or an Electrical Installer. (Doc. # 1 at ¶¶ 2, 28). Strada also employs "helpers," who Reyes describes as "the laborer[s] who

---

[1] In his Declaration, Reyes states that he worked for Strada from January 2020 until April 2021. (Doc. # 32-4 at 1).

1

ride[] along with the Installer/electrician to all work sites and on work orders." (Id. at ¶ 5). According to Reyes, he was "forced" to give a portion of his pay to the helper assigned to him, and although Strada left to his discretion how much to pay the helper, Strada directed that helpers should be paid 30% of the rate paid to the installers. (Id. at ¶¶ 35-36, 48, 53).

In the complaint, Reyes classifies both installers and helpers as "piece rate workers and laborers," and alleges that Strada shaves or edits overtime hours from these workers' time records, permits employees to work hours off the clock, and prevents full and accurate reporting of workers' hours. (Id. at ¶¶ 3-7, 41-45). According to Reyes, installers, helpers, and other "low-voltage technicians" were paid on a "piece rate per work order or job assigned, irrespective of the number of hours" they actually worked. (Id. at ¶¶ 7, 47). Thus, Reyes seeks to bring a collective action for Strada's alleged violations of the Fair Labor Standards Act's ("FLSA") overtime provisions. (Id. at ¶¶ 11, 109-39)

Specifically, Reyes seeks a Court order conditionally certifying a collective of:

> All persons employed by or performing work for [Strada], working from or reporting to an office or location in Florida or Alabama, working under a

> Piece Rate compensation plan, under the titles or positions of Electrical Installer, Installer, Technician, Rough and Trim Installer, Rough and Trim Electrician, Electrician, Helper, and any other job titles previously or currently used to describe persons working on a Piece Rate basis at any time within the three (3) years preceding receipt of this Notice.

(Doc. # 32 at 5).

Reyes has now filed a Motion seeking conditional certification of a class of similarly situated employees. (Doc. # 32). The Motion has been fully briefed (Doc. ## 45, 54) and is ripe for review.

## II. Legal Standard

The FLSA expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. See 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated."). In prospective collective actions brought pursuant to Section 216(b), potential plaintiffs must affirmatively opt into the collective action. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

3

Pursuant to Section 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" activity. Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

In making collective action certification determinations under the FLSA, courts typically follow a two-tiered approach:

> The first determination is made at the so-called notice stage. At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt in. The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)(internal citations and quotation marks omitted).

At the notice stage, the Court should initially determine whether there are other employees who desire to opt into the action and whether the employees who desire to opt in are similarly situated. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008); Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218. The plaintiff bears the burden of showing a reasonable basis for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Morgan, 551 F.3d at 1261 (internal citations omitted).

### III. Analysis

#### A.   Whether other employees desire to opt-in

First, the Court must "satisfy itself that there are other employees . . . who desire to 'opt-in.'" Dybach, 942 F.2d at 1567-68. The onus is on the plaintiff to demonstrate a reasonable basis for the assertion that other employees desire to opt-in. Leo v. Sarasota Cty. Sch. Bd., No. 8:16-cv-3190-JSM-TGW, 2017 WL 477721, at *2 (M.D. Fla. Feb. 6, 2017). "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees,

5

consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees." Hart v. JPMorgan Chase Bank, N.A., No. 8:12-cv-470-JDW-TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012).

Here, Reyes has met his light burden to establish a reasonable basis that other employees desire to opt-in to this action. Prior to filing the instant Motion, twelve other individuals – all stating that they worked for Strada as installers, electricians, and/or helpers during the pertinent time period – filed consents to join this lawsuit as opt-in plaintiffs. (Doc. ## 5, 9, 10, 20, 26, 29). And after the filing of the instant Motion, six more Strada employees filed consents to opt into this litigation. (Doc. ## 55-59).

This Court is mindful that "there is no magic number requirement for the notice stage," and that courts will conditionally certify FLSA collectives even with relatively few plaintiffs present at this stage of the litigation. Ciani v. Talk of the Town Rests., Inc., No. 8:14-cv-2197-VMC-AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015). In light of the circumstances present in this case, Reyes has established a reasonable basis that there are other Strada employees who would desire to opt into the action.

6

### B.   **Whether the employees are similarly situated**

As explained by the Eleventh Circuit, a plaintiff's burden of showing a "reasonable basis" for the claim that similarly situated employees seek to join the action is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." Morgan, 551 F.3d at 1260-61 (internal citations omitted). Still, while the plaintiff's "burden at the notice stage is not heavy, it is not invisible," and there must be more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs" would come forward. Id. at 1261; Hart, 2012 WL 6196035, at *4 (citations and internal quotation marks omitted).

For purposes of defining the "similarly situated class" under Section 216(b), the plaintiffs must show that the employees are similarly situated with respect to their job requirements and pay provisions. Morgan, 551 F.3d at 1259 (citing Dybach, 942 F.2d at 1567-68). Reyes has failed to make this showing. He has not demonstrated that installers

and helpers are similarly situated with respect to their pay provisions.[2]

According to Reyes's own complaint, Strada pays the installers directly on a piece rate basis, and the installers then pay helpers an unspecified amount at their discretion. (Doc. # 1 at ¶¶ 35-36, 48, 53). The declarations submitted by Reyes support this. For example, in the declaration submitted by Scarleht Santos, she stated that as a helper, she received only a percentage of the piece rate assigned by her electrician/installer, Reyes, and that she never even reported her own work hours, as the assigned electrician/installer filled out the work orders. (Doc. # 32-9 at ¶¶ 10, 12).

Further, according to a declaration submitted by a Strada executive, there are various types of electrical installers employed by Strada – including installers paid on a piece-rate basis and installers paid on an hourly basis. (Doc. # 45-6 at ¶¶ 17-19). And, as Strada points out, at least

---

[2] There is also some doubt in the Court's mind as to whether installers and helpers are similarly situated with respect to their job requirements. However, because the submitted evidence demonstrates that the workers' pay provisions do not render them similarly situated, the Court need not address this prong, as a collective action must meet both requirements in order to be conditionally certified.

one of the opt-in Plaintiffs, Joshua Jones, was likely one of those installers paid on an hourly basis, based on (1) the fact that he never finished the training program and employees in training are paid hourly; (2) Jones states that he recorded his hours on an app on his phone, and this was the method used by Strada for recording the hours of hourly installers; and (3) Strada submitted pay records for Jones showing him as an hourly employee. (Doc. # 32-7 at ¶¶ 7, 10; Doc. # 45-6 at ¶¶ 19, 21; Doc. # 45-1). Thus, it appears that within Plaintiff's proposed collective action there are <u>three</u> methods of payment – piece rate, hourly, and a discretionary portion of pay as assigned by the electrician/installer. Under these circumstances, conditional certification is inappropriate.

Moreover, the Court is concerned about the need for individualized, plaintiff-specific inquiries, should this collective action be conditionally certified. Such individual inquiries work against the purpose of treating claims collectively and counsel against conditional certification. <u>See</u> <u>Holt v. Rite Aid Corp.</u>, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (denying certification in an FLSA case and stating "the court is not satisfied that conditionally certifying a nationwide collective action, or even a regional collective

action, will partake of the economy of scale envisioned by the FLSA collective action procedure"); see also West v. Verizon Commc'ns, Inc., No. 8:08-cv-1325-VMC-MAP, 2009 WL 2957963, at *7 (M.D. Fla. Sept.10, 2009) (denying certification in an FLSA case because "the need for individualized inquiries would contravene the basic theory of judicial economy upon which the certification of collective actions is based").

For example, this Court has denied conditional certification where the putative class members were subject to different supervisors, different timekeeping practices, and different job obligations and responsibilities, thus necessitating plaintiff-specific inquiries. See Hart, 2012 WL 6196035, at *5; see also Lewis-Gursky v. Citigroup, Inc., No. 8:15-cv-2887-SCB-MAP, 2017 WL 892604, at *5 (M.D. Fla. Mar. 6, 2017) (denying motion for conditional certification because "the diversity of the proposed class" – including groups with different job titles and duties who worked at a wide swath of geographic locations – "would lead to individual inquiries that would eviscerate all notions of judicial economy that would otherwise be served by conditional class certification" (internal alteration omitted)).

The same is true here. Strada has several different methods of counting and recording time worked. Some workers use a digital app on their phones while others use paper work orders. (Doc. # 45-6 at ¶¶ 18-20). Of the opt-in plaintiffs who submitted declarations in this case, there is a mix, with some using the app and others using paper records. Two of the opt-in plaintiffs used both. (Doc. # 32-12; Doc. # 32-14). For example, opt-in Plaintiff Christopher Grant recorded his time on the app and was paid hourly while in training and then moved to a piece-rate basis once he was out of training.[3] (Doc. # 32-12 at 1-2). This inconsistency in timekeeping practices implicates individual inquiries that undermine the prudence of collective certification in this matter.

What's more, the declarations submitted by Plaintiffs are inconsistent in whether they themselves altered their time sheets to avoid listing hours over 40 per week or whether their supervisors amended their hours after the fact. See, e.g., (Doc. # 32-4 at ¶ 10 (stating that his reported work hours "were edited and reduced by either the shop supervisor

---

[3] The Court notes, as pointed out by Strada, that Mr. Grant is the named plaintiff in a separate action against Strada that is currently pending for the district court in the Northern District of Florida, seeking unpaid overtime during the time in which he was in training. See Grant v. Strada Services, Inc., Case No. 3:21-cv-859-MCR-EMT.

or the office manager to reflect 40 or less hours per week"); Doc. # 32-16 at ¶ 11 (stating that his supervisor told him to clock out of the timekeeping software at 3:30 everyday, regardless of when he stopped work)). One of the opt-in Plaintiffs stated that he never even signed or filled in hourly work reports – his manager did it for him. See (Doc. # 32-6 at 2). Yet another stated that, "I was not required to clock in my work hours." (Doc. # 32-10 at ¶ 18). This, too, would raise an individual inquiry that would be counterproductive in a collective action. See Hart, 2012 WL 6196035, at *5 (stating that different timekeeping practices implicated plaintiff-specific inquiries as to "whether plaintiffs modified their time records to reflect the actual time worked [and] whether plaintiffs' supervisors were aware of any 'off-the-clock' work").

In sum, Reyes has not met his burden, even using the fairly lenient standard required at this notice stage, of showing a "reasonable basis" for his claim that there are similarly situated employees. See Morgan, 551 F.3d at 1260; see also Hart, 2012 WL 6196035, at *4 (explaining that while the plaintiff's "burden at the notice stage is not heavy, it is not invisible"). On the contrary, even if a common scheme by Strada to force its employees to under-report work hours

existed, the evidence submitted demonstrates that certification would be inappropriate here because the diversity of the proposed class would lead to individualized inquiries and would eviscerate the judicial economy otherwise served by conditional class certification. See Lewis-Gursky, 2017 WL 892604, at *5. In so finding, the Court does not express any opinion on the merits of this case.

Finally, because the Court determines that conditional certification is inappropriate for the reasons explained in this Order, it will not address Strada's other arguments about the alleged discrepancies in the Plaintiffs' answers to the Court's interrogatories or their claims of improper solicitation. See (Doc. # 45 at 2-8).

Because Reyes has not met his burden of demonstrating that the other members of the putative collective action are similarly situated, his Motion must be denied. Accordingly, all existing opt-in Plaintiffs are hereby dismissed from the lawsuit without prejudice and this matter will proceed only on Reyes's individual claims. See Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1301 (11th Cir. 2008) (explaining when district court denied certification of an FLSA collective action, it allowed the named plaintiffs' claims to go forward and dismissed the opt-in plaintiffs without

13

prejudice); Hipp, 252 F.3d at 1218 (suggesting opt-in plaintiffs should be dismissed without prejudice in an FLSA collective action that is decertified).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff's motion seeking conditional certification of an FLSA collective action (Doc. # 32) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of September, 2021.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE