**RICHARD REYES,** individually and on behalf of others similarly situated,

Plaintiff,

v.

**STRADA SERVICES INC.** d/b/a Strada Electric and Security,

Defendant.

Case No: 8:21-cv-00976-VMC

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT and ENTRY OF STIPULATED JUDGEMENT

Plaintiff, RICHARD REYES and Opt-In Plaintiffs (individually "Plaintiff" or together with Opt-In Plaintiffs, the "Plaintiffs"), together with STRADA SERVICES INC. ("Defendant", "Strada" or together with the Plaintiffs, the "Parties"), jointly move for an Order Approving the FLSA Settlement and Entry of a Stipulated Judgment and state as follows:

## INTRODUCTION

The Parties have entered into a Settlement Agreement to resolve the Fair Labor Standards Act claims (the "FLSA" 29 U.S.C. 216(b)) arising from this action. Pursuant to this Court's Order [D.E. 72] and the Eleventh Circuit's precedent *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages

for FLSA violations," the parties must present any proposed settlement to the district court, which "**may enter a stipulated judgment** after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982).

Accordingly, the Parties present the Settlement Agreement (the "Settlement Agreement") to the Court for approval. Pursuant to the Settlement Agreement, Defendant shall pay Plaintiff and Opt-In Plaintiffs One Hundred and Sixty-Eight Thousand, Five Hundred Dollars ($168,500.00) in exchange for the release of Plaintiffs' wage claims and dismissal of this case. In addition, the Settlement Agreement provides for the payment of Plaintiffs' attorneys' fees ($217,000.00) and costs ($11,875.20). A copy of the executed Settlement Agreement is attached hereto as Exhibit 1, and a breakdown of each Plaintiffs' individual settlement proceeds are listed in Exhibit 2.

The Parties now move this Court for an order approving the terms of the Settlement Agreement, dismissing the case, approving the provisions of attorney's fees and costs, and retaining jurisdiction to enforce the terms of the Settlement Agreement. Given the significant risk and expense of continued litigation, the Settlement Agreement should be approved. The Settlement Agreement represents a fair, adequate, and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law, and questions of whether the Plaintiffs would obtain favorable judgment at trial.

# **BACKGROUND**

1. Plaintiffs were formerly employed by Defendant as electrical installers and/or electrical helpers who installed residential electrical wiring in new construction homes both before drywall (rough-ins) and after drywall (trim).

2. All installation technicians were strictly paid on a piece-rate basis. The piece rate amount was calculated based upon Strada's estimate of the time/cost of the installation related to the home's square footage.

3. On April 23, 2021, Plaintiff Reyes brought this collective action seeking damages for Defendant's alleged failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §201et. seq ("FLSA") [DE 1].

4. Plaintiff Reyes alleged that Defendant failed or refused to pay overtime compensation for hours worked in excess of forty hours during any given workweek, and that he was discouraged from reporting overtime hours both because of intentional actions and representations by Strada and because they made it known to him that they were not going to pay premiums for overtime hours worked.

5. Plaintiff Reyes was then joined by 18 other party Plaintiffs who worked for Strada as installation technicians and who also alleged that they were denied overtime compensation and were discouraged/prevented from reporting overtime hours. (This 18 includes opt-in Plaintiff Connor Whitsitt [DE 67-5],

who is considered an opt-in Plaintiff for the purpose of this Settlement and whose consent to join is attached as Exhibit 3 to this Motion. Mr. Whitsitt likewise consented to the named Plaintiff, Reyes to settle his wages with Defendant.)

6. Defendant has denied that it failed to properly pay overtime premiums for all hours worked in addition to 40 hours each workweek, and has denied that it maintained any common scheme to deprive its employees of overtime payments.

7. In lieu of filing their own individual lawsuits or actions, each of the 18 opt-in party plaintiffs specifically authorized Richard Reyes to negotiate and reach a settlement with the Defendant on their behalf and agreed to be bound by the terms of any settlement reached according to the express terms of the Consent to Join Forms.[1]

8. On July 7, 2021, Plaintiff filed a Motion to Conditionally Certify a Collective Action and Authorize Notice to other installation technicians [DE 32].

---

[1] *See e.g.* DE 5-1 Consent Form of James Bulmer. *"* I authorize the above named Plaintiff and designate them as my agent to make decisions on my behalf concerning the litigation, to negotiate and/or settle any and all overtime and minimum wage claims(s) I have against the Defendants under state or federal law, and to enter into an agreement with Plaintiff's counsel concerning the payment and compensation of attorneys' fees and costs."

9. On July 21, 2021, the Parties conducted a mediation before experienced employment and FLSA mediator Mark Hanley Esq., which resulted in an impasse [DE 39].

10. Subsequently, the Parties engaged in substantial discovery, and Plaintiffs conducted and propounded extensive written discovery upon Defendant, took several depositions and obtained extensive records through numerous third party subpoenas.

11. On September 27, 2021, the Court denied conditional certification [DE 64].

12. On October 6, 2021, Plaintiffs moved for reconsideration on the Court's denial of conditional certification [DE 66][2], based upon the newly acquired evidence from third-party discovery and corporate representative testimony, which remained ripe for review up to the date of this Settlement.

13. On November 1, 2021, Defendant filed their opposition to Plaintiff's Motion for reconsideration [DE 69]; but in the interim, the parties engaged in extensive arm's length negotiations to settle the wage claims of all plaintiffs.

14. On November 15, 2021 another Strada piece rate worker, Jahola Thompson commenced the filing of an identical FLSA collective action in case no. 6:21-

---

[2] The Court dismissed the opt-in Plaintiffs **without** prejudice [DE 64 p. 13], meaning that upon Plaintiffs' motion for reconsideration the opt-in Plaintiffs continued to be party-plaintiffs pursuant to Eleventh Circuit precedent. *See* Jenkins v. SDI Fla. LLC (M.D. Fla. 2018) *citing* Mickles v. Country Club Inc., 887 F.3d 1270, 1278 (11th Cir. 2018).

cv-1915-PGB-DCI. The parties have also settled Mr. Thompson's claim and will be simultaneously submitting a similar settlement agreement to that Court for approval.

15. Defendant continues to assert that Plaintiffs were properly paid for all hours (including overtime hours) worked and/or reported and dispute that they had knowledge of Plaintiffs working more than 40 hours in any week or that they ever edited or shaved off hours. Defendant asserts that they acted in good faith compliance with the FLSA, and as per the FLSA, paid what the Plaintiffs according to the hours they submitted. Defendant also disputes that any employee was discouraged from reporting more than 40 hours and contends that that the Plaintiffs are embellishing their work hours for monetary gains.

16. Plaintiffs however continue to assert that they are (i) similarly situated as they were all paid under the same compensation plan as Piece Rate Workers (PRW) and that they were all suffered to work from the same off the clock FLSA violation; and (ii) that they were willfully denied overtime compensation and prohibited from reporting overtime hours. Plaintiffs assert that the company GPS records corroborate their overtime hour claims and that Strada knew or should have known about the additional overtime hours worked from these records.

17. Conversely, Strada contends the GPS records only shows when Plaintiffs were not working, on a dalliance, or driving non-compensable portal to portal activities.

18. Despite the Parties' arguments and differences, the parties have reached a compromise to resolve the Plaintiffs claims, including their attorney's fees and costs incurred.

19. As the Court is probably aware from the docket, since this litigation's inception this matter has been heavily litigated. The Court has held hearings, and the Parties have drafted and reviewed a multitude of motions and filings. Moreover, there have been thousands of pages of documents produced in response to discovery, and from subpoenas many thousands of electronically stored files and records, and, the Plaintiffs have taken several depositions.

20. Nonetheless, Strada has concluded that further litigation of this matter would be protracted, distracting, and expensive, and thus it is desirable that this matter be fully and finally resolved in the manner and upon the terms set forth in the FLSA Settlement Agreement (Exhibit 1).

21. Similarly, Plaintiffs, and their experienced FLSA wage and hour attorneys have determined that the settlement set forth in the FLSA Settlement Agreement is in their best interest. Plaintiffs recognize and acknowledge the time and expense of continued litigation necessary to prosecute this case

through summary judgment, trial, and possible appeal. Moreover, the result is inherently uncertain and risky, including the risk of a recovery of $0.00 and possibility that Plaintiffs may be responsible for Defendant's taxable costs. Additionally, given the arguments asserted by Defendant, continued litigation would be consumed by protracted, incremental litigation, including motions to compel and for sanctions and other discovery disputes which detract from the litigation on the merits of Plaintiffs' overtime wage claims. Numerous non-party witness and organizations would have been drug into this litigation.

22. Although a fair amount of discovery has been conducted, there remain many genuine issues of factual and legal issues in dispute, all of which would still require a year or more of continued litigation, which, if the Court were to grant conditional certification upon Plaintiffs' Motion for Reconsideration, could enlarge the scope of the discovery and factual disputes:

   a. Whether Plaintiffs performed work off-the-clock;

   b. Whether Defendant was aware of Plaintiffs' alleged work off-the-clock;

   c. Whether a two or three-year statute of limitations should apply;

   d. Whether Defendant acted in objective and subjective good faith such that payment of liquidated damages is applicable;

   e. Whether Plaintiffs were compensated for all compensable hours worked, and

 f. Whether Plaintiffs worked in excess of forty (40) hours and, if so, whether Plaintiffs received proper overtime compensation.

23. Notwithstanding the foregoing, upon careful review of the Plaintiffs' payroll records, time records, and GPS records; Plaintiffs, with assistance of counsel, determined that a compromise was in his best interests, and the best interests of his fellow opt-in plaintiffs.

24. In reaching this compromise, Plaintiff and Plaintiffs' Counsel considered the fact that had they proceeded to trial, there was a risk of limiting their wage claims to a two-year Statute of Limitations period, (back to approximately April 2019) and that the court may decline to award liquidated damages.

25. On November 19, 2021, the Parties reached a negotiated settlement on the essential and material terms of this settlement, and all terms of the settlement were subsequently reduced to writing, and then approved by all parties and their counsel [DE 71].[3] Plaintiff Reyes has executed the written settlement agreement individually, in his representative capacity, and as agent for the opt-in Plaintiffs.  The Settlement Agreement executed in counterparts is attached as Exhibit 1.

---

[3] The Parties simultaneously agreed to settle a pending related case in the matter of <u>Thompson v. Strada Services, Inc</u>.; CASE #: 6:21-cv-1915-PGB-DCI; (MDFL) (filed on November 15, 2021). [DE 70].

26. The Plaintiffs reached this settlement with advice of counsel and relied upon their counsel to analyze the payroll records, time records, and other business/ GPS records to perform the wage calculations. The final settlement distributions were applied pro rata to each of the opt-in Plaintiffs according to their qualifying workweeks, the time records and their alleged unpaid overtime hours, and their own respective regular rates of pay.

27. Pursuant to the terms of the Settlement Agreement, Defendant, Strada has agreed to pay Plaintiffs the aggregate sum of $168,500.00.

28. In addition to resolving the Plaintiffs' underlying claims, the Settlement Agreement resolves all outstanding claims for attorneys' fees and costs. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed for Strada to pay Plaintiffs' attorneys' fees and costs, totaling $228,875.20, which includes reimbursement of Plaintiffs' costs ($11,875.20) incurred in this matter.

29. Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount paid to Plaintiffs so as not to affect the wage payments.

30. For purposes of settlement, the Parties stipulated that the quantum of attorneys' fees and costs is fair and reasonable pursuant to *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

31. Defendant has been represented by highly competent and professional counsel, who have vigorously represented the Defendant.

32. Accordingly, Feldman Legal Group with its attorneys, Mitchell Feldman has incurred in excess of 395 legal hours in this matter along with associate of Feldman Legal Group, Jason Quintus, who has incurred 60 hours; and Benjamin L. Williams has also incurred in excess of 181.3 legal hours in this matter. Under a loadstar calculation this equates to in excess of $258,395.00.[4] *See* Exhibits 3 - Declaration of Mitchell L. Feldman and Exhibit 4 - Declaration of Benjamin Lee Williams.

33. The amount Defendant has agreed and stipulated to pay to Plaintiffs for incurred attorney fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount agreed to be paid to Plaintiffs for wages and after agreeing upon a sum to be paid to the Plaintiffs to settle their wage claims; moreover, the attorneys' fees and costs agreed to be paid by Defendant are fair and reasonable under the circumstances here.

WHEREFORE, for the reasons set forth above and as set forth in the below Memorandum of Law, the Parties respectfully request that the Court enter an order approving the Settlement Agreement, reserve Jurisdiction for a period of

---

[4] Plaintiffs' Counsel's hourly rate is reasonably set at $425.00/hour for Feldman, $400.00/hour for Williams and $300.00/hour for Quintus. These rates are within the reasonable range in this District.

60 days to enforce the terms of the Settlement Agreement, and dismiss this matter with prejudice.

## MEMORANDUM OF LAW

### I. THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS

#### A. The Settlement Meets the Requirements Set Forth in Lynn's Food.

As the Eleventh Circuit explained in Lynn's Food Stores, Inc. v. United States, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing this settlement, this Court will find that the Parties' Settlement Agreement is fair, reasonable, and should be approved. The Stipulation resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to unpaid overtime compensation for work allegedly performed off-the-clock.

Furthermore, the Plaintiffs were represented by experienced wage & hour counsel, who in the "adversarial context of a lawsuit," negotiated a "reasonable compromise of disputed issues." on behalf of the Plaintiffs. *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See* Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977); Lynn's Food Stores, 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation."

Lynn's Food Stores, 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

A. the existence of fraud or collusion behind the settlement;

B. the complexity, expense, and likely duration of the litigation;

C. the stage of the proceedings and the amount of discovery completed;

D. the probability of plaintiff's success on the merits;

E. the range of possible recovery, and

F. the opinions of the counsel.

*See* Leverso v. South Trust Bank of Ala., Nat. Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)[5]

---

[5] *See also* Dees v. Hydradry, Inc., 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); Hamilton v. Frito-Lay, Inc., 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also* Hill v. Florida Indus. Elec., Inc., No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); Pacheco v. JHM Enters., Inc., *et al.,* 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3*; see also* Cotton v. Hinton. 559 F.2d 1326, 1331 (5th Cir. 1977).

## B. The Settlement Was the Result of Arm's Length Negotiations Free from Collusion

The settlement reached was the result of hard-fought, adversarial, arm's length negotiations that have taken place over litigation that has been ongoing for over six months. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. <u>Pickett v. IBP</u>, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion, and after mediation by an experienced employment mediator had reached impasse. The Parties were able to settle this action only after they engaged in significant discovery, significant discovery disputes. *See* <u>Diaz v. Hillsborough County Hos. Authority</u>,2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). The extensive discovery and hearing alone in this case establish the adversarial nature of this litigation, and the benefits of a compromised settlement. Moreover, Plaintiff Reyes desired resolution in lieu of continued, protracted litigation, time commitments, and having to commit to attending a trial. The Court should find that the settlement was the result of arm's-length bargaining.

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' Counsel believe that on inspection, this Court will join them in concluding that the proposed Settlement Agreement is fair, reasonable, and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to liability [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See* Lynn's Foods*, 679 F.2d at 1353-54. Here, the Plaintiffs are each receiving on average $8,870.50 in compensation without having to prove anything to a jury and based solely upon their alleged estimations of unpaid work hours and without regard to whether they even worked 1 day or 5 or more days in the week. Each Plaintiff is receiving a pro rata share of the overall settlement proceeds based upon the hours each alleged and taking into consideration the qualifying workweeks for each individual.

### C. The Complexity, Expense and Duration of Litigation

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed in April 2021, and settlement was preceded by more than 8 months of heavy, contentious and complex discovery and litigation. During the pendency of the case, the Parties engaged in formal discovery, including

exchanging tens of thousands of pages of personnel files, time records, emails, GPS data, and hundreds of additional ESI files. Plaintiffs' counsel conducted multiple depositions of Strada Services Inc., officers and employees, and also analyzed and assessed all the payroll records and other Strada records and documents. This matter was ultimately resolved only after the parties engaged in extensive research and analysis and arms-length negotiations after mediation had failed.

If the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery, litigation, and summary judgment briefings. With near certainty, this case would require a 10-day jury trial on questions of fact and damages in order to present the claims and defenses regarding whether Plaintiffs were required and/or permitted to work off-the-clock without overtime compensation. To prove their claims Plaintiffs would incur extensive costs involving additional depositions and other discovery costs. But Plaintiffs would also likely incur costly forensic computer analysis and costly ESI discovery. Further, the Parties would likely require one or more experts related to the underlying claims and/or defenses.

Thus, settlement is a reasonable means for both Parties to minimize their future risks and litigation costs, which Plaintiffs estimate could reach over $1MM in fees and additional costs by the time the case proceeded to a lengthy 10-day jury trial. Additionally, after careful review of the records and discussions with counsel,

the Plaintiffs believe they are receiving a fair and reasonable amount of wages and do not wish to continue with costly, risky litigation without any real potential to recover additional sums. Plaintiffs' Counsel likewise believe the resolution is fair and reasonable taking into account the risks, burdens of proof, and the records produced to date. Plaintiffs also carry the risk of having to pay Defendant's cost and expenses if they did not prevail - risks Plaintiffs naturally wish to mitigate and avoid.

### D. The Stage of Proceedings at Which The Settlement Was Achieved.

The Parties reached settlement after more than eight months of intense litigation. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery, and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in detailed evaluation of Strada's compensation practices for Plaintiffs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged records, information, data, and representations regarding the claims and defenses in this matter. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### E. The Likelihood of Success at Trial.

Plaintiffs were employed as piece-rate electrical installers. The core *bona fide* FLSA disputes in this case relates to whether Plaintiffs were required and/or permitted to work off-the-clock without proper and adequate overtime compensation; whether any or to what extent any overtime pay is due; whether liquidated damages are appropriate; and whether a two or three-year statute of limitations would be applicable.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, due to the Court's Order denying conditional certification [DE 64], the Plaintiffs may lose the opportunity and benefits of trying their claims together pending the ruling on reconsideration [DE 66]. Second, Plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have had to establish that they in fact worked off-the-clock without adequate overtime compensation. At trial, Strada would have claimed that (i) Strada has an express policy forbidding installers from working off-the-clock; (ii) Strada implemented safeguards to prevent installers from working off-the-clock; and (iii) Strada enacted and enforced policies sufficient to show that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

If the case were tried, the jury would have been presented with a case where Strada would have argued that it maintained compliance with the FLSA, and Plaintiffs would bear the burden of proving that they worked off-the-clock with Strada's knowledge and/or tacit permission of management.

Second, Plaintiffs would have had to establish the number of hours they worked off-the-clock. In the damage analysis conducted by Plaintiffs' Counsel, each Plaintiff is credited with overtime wages based upon all of their estimated hours worked for each qualified week during the three-year statute of limitations periods. These overtime wages were discounted or off-set by overtime hours Strada actually paid. To reach the final settlement amount, Plaintiffs then discounted the wages at issue by factoring in the risks of the Defendant's arguments and evidence to be presented at trial, to come upon with discounted damage analysis. It is important to note that the final settlement amounts reflect more than full payment of all unpaid overtime hours alleged during the three-year period based solely upon Plaintiffs' estimation. But if the case were tried, Strada would have the opportunity to establish that the number of hours worked per week was significantly less than the Plaintiff's approximated hours, which could substantially reduce Plaintiffs' damages. Furthermore, if Defendant's prevailed on their good faith defense, liquidated damages would not be awarded, and similarly, all wages older than 2 years would be time barred.

Despite diligent investigation and research, it remains a highly uncertain question of fact of how many actual overtime hours each Plaintiff worked off-the-clock, whether a two or three-year statute of limitations is applicable, and whether or not liquidated damages are appropriate in this matter. In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise the bona fide dispute. Mr. Reyes has always sought a compromise of the claims, and when such an opportunity arose, he chose to pursue resolution and compromise. It would seem illogical to force a plaintiff to risk going all the way to trial and gambling on whether a jury would agree with him and the other plaintiffs on their alleged unpaid work hours, while also carrying the risk of having to pay Defendant thousands of dollars in costs and expenses if they did not prevail on their claims.

There is in this case, like most disputed claims and lawsuits, the possibility that Plaintiffs would recover $0, and worse have to pay the other side thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $168,500.00 representing a reasonable compromise of all the Plaintiffs' overtime wage claims in which each person on average is paid $8,500.00 in wages. These payments represent approximately 12.5 unpaid overtime hours per work week plus an equal sum in for liquidated damages, for each Plaintiff. Ultimately, each Plaintiff is even receiving

nearly half the best-case scenario of the wages they which might be awarded by a jury, and thus is a fair and reasonable compromise.

**F. The Court Should Approve the Negotiated and Stipulated Sum Defendants agreed to pay to Plaintiffs for reimbursement of Their Attorneys' Fees and Costs Incurred in this action, Pursuant to the Settlement Agreement.**

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. *See* Helms v. Central Fla. Reg. Hosp., 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); Strong v. BellSouth Telecomms., Inc., 137 F.3d 844, 849-50 (5th Cir. 1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." Bonetti v. Embarq Mgmt. Co., 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreement provides for the Defendant to pay Plaintiffs, attorneys' fees and costs as part of the resolution of Plaintiffs' claims in the amount of $228,875.00 in fees and costs, which includes including $11,875.15 in taxable and incurred advanced costs and expenses consisting of filing fees,

process server charges, court reporter charges and non-party subpoena charges plaintiff's counsel incurred.

Plaintiffs' attorneys' fees and costs stipulated and agreed to be paid by the Defendant was separately negotiated from the sums agreed to be paid for the wage claims of each Plaintiff. Moreover, Plaintiffs' attorneys incurred substantially higher sums in fees (lodestars) and through separate negotiations with Defendants', the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendants without regard to the amount paid to Plaintiffs. *See* Exhibits 5 - Declaration of Mitchell L. Feldman and Exhibit 6 - Declaration of Benjamin Lee Williams.

The Parties stipulated that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Further, the sum agreed upon is a substantial voluntary reduction (17% reduction) in the amount of fees actually incurred by Plaintiffs' attorneys, which Plaintiffs could have sought the Court to determine a reasonable fee and which could have awarded a substantially higher sum. Over the past 8 months of litigation, Plaintiffs' counsel spent a significant amount of time in the case preparing the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable issues, engaging in formal and informal discovery, and attending hearings and depositions; engaging mediation and informal

settlement discussions with Defendant's counsel that ultimately resulted in this settlement.

Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with numerous Plaintiffs and witnesses further increasing the number of hours expended in this matter. Plaintiffs' Counsel reviewed and reconciled tens of thousands of pages of documents and thousands of electronically stored files and records to create a monumental damages model which included various scenarios. Ultimately, Plaintiff counsel's damages model was presented to Strada and incorporated the time records and GPS records and relied upon by both parties in reaching a settlement that compensates a reasonable amount each Plaintiff could be awarded by a jury for unpaid wages due and an equal amount of liquidated damages.

Plaintiffs' counsel spent substantially more hours than the attorneys' fees reflect litigating this matter from inception through filing this Motion for Approval of Settlement. Plaintiffs' counsel also spent and incurred approximately $11,875.20 in costs associated with this litigation. During settlement negotiations, the Parties separately negotiated attorneys' fees and costs without regard to the amount owed to Plaintiffs. Ultimately, the Parties agreed to the payment of $217,000.00 in attorneys' fees and $11,875.20 in costs to be paid by Defendants to resolve the prevailing Plaintiffs' claim for attorneys' fees and costs. Based upon Plaintiffs' counsel's hourly rates as awarded in other FLSA actions, and the reasonable rates

for similarly experienced attorneys in FLSA collective actions in this district, hourly rates of $425.00 for Attorney Feldman; $400.00 for Attorney Williams, and $300.00 for associate attorney Quintus are reasonable. Further, the fact that Plaintiffs' counsel agreed to a reduced attorneys' fee provision demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Further Plaintiffs' Counsel's attorneys' fees and costs are reasonable in light of the fact that Plaintiffs' Counsel obtained $168,500.00 in wages as part of the settlement of Plaintiffs' claims despite Defendant's vigorous defenses that Plaintiffs' did not work off-the-clock and that Plaintiffs were expressly forbidden from working off-the-clock.

This settlement was achieved only by and through Plaintiffs' counsel's ability to persuade Defendant that Plaintiffs' claims had merit and that Defendant faced the very real risks of having to pay more than this sum in wages, as well as incurring attorney's fees which already eclipsed the entire amount of the settlement if they continued to litigate. This case settled after 8 months of litigation. Thus, it is appropriate that Plaintiffs' counsel be fairly and reasonably compensated for performing these necessary legal services. Defendant stipulated that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances, and Plaintiffs have also agreed to accept the reduced amount of attorneys' fees from their respective lodestars for the purpose of ending this litigation and obtaining a

settlement that Plaintiffs desired in lieu of the continued risks of trial, including the risks of having to pay the Defendant's litigation costs. Other courts in this district have indicated that when **attorney's fees** are negotiated separately from the payment to plaintiff(s), "an in depth analysis [of the reasonableness of the **fees**] is not necessary unless the unreasonableness is apparent from the **face** of the documents." King v. My Online Neighborhood, Inc., No. 6:06-cv-435-Orl-22JGG, 2007 U.S. Dist. LEXIS 16133, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007); McGinnis v. Taylor Morrison, Inc., 3:09-cv-1204-J-32MCR (M.D. Fla. Jan. 23, 2010); Small v. Beach Pizza, No. 3:20-cv-1306-BJD-MCR, 2021 U.S. Dist. LEXIS 214600, at *5 (M.D. Fla. Nov. 5, 2021).

All of the above factors warrant that the $228,875.20 agreed by negotiation to be paid by Strada to Plaintiffs' counsel for reimbursement of incurred attorneys' fees and costs are fair and reasonable under all the facts and circumstances, and the Court should approve the same. This compromised sum moreover is fair on its face given all the above information.

## CONCLUSION

The Parties voluntarily agreed to the terms of their settlement. All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreement,

reserve jurisdiction to enforce the terms of this FLSA settlement agreement for a period of 60 days, and dismiss this case with prejudice.

Dated:  December 9, 2021.

Respectfully Submitted this 9th day of December 2021

/s/ Mitchell L. Feldman
Mitchell Feldman Esq.
Florida Bar No. 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Avenue,
Suite 101
Tampa, FL 33625
Tel: 813-639-9366
Fax:813-639-9376
mfeldman@flandgatrialattorneys.com

Attorneys for Plaintiff, individually, and on behalf of all opt-in Plaintiffs

/s/ Paul L. Sutherland
Paul L. Sutherland, Esquire
Florida Bar No. 1008093
Nathan A. McCoy, Esquire
Florida Bar No. 0676101
WILSON MCCOY, P.A.
100 E. Sybelia Ave.,
Suite 205
Maitland, Florida 32751
Telephone: (407) 803-5400
Facsimile:(407)803-4617
psutherland@wilsonmccoylaw.com
nmccoy@wilsonmccoylaw.com
pleadings@wilsonmccoylaw.com

Attorneys for the Defendant

/s/ Benjamin L. Williams
Benjamin L. Williams Esq.
Florida Bar No. 0030657
WILLIAMS LAW P.A.
464 Sturdivant Avenue
Atlantic Beach, FL 32233
(tel) 904-580-6060
(fax) 904-417-7494
bwilliams@williamslawjax.com

Attorneys for Plaintiff, individually, and on behalf of all opt-in Plaintiffs